UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------

LORRAINE RITCHIE,

                Plaintiff,

   -v-                                        5:12-CV-1687

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

--------------------------------

| APPEARANCES: | OF COUNSEL: |
|---|---|
| AMDURSKY, PELKY, FENNELL &<br>   WALLEN, P.C.<br>Attorneys for Plaintiff<br>26 East Oneida Street<br>Oswego, NY  13126 | GREGORY R. GILBERT, ESQ. |
| OFFICE OF REGIONAL GENERAL COUNSEL<br>SOCIAL SECURITY ADMINISTRATION REGION II<br>Attorneys for Defendant<br>26 Federal Plaza, Room 3904<br>New York, NY  10278 | ROBERT R. SCHRIVER, ESQ. |

DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION and ORDER**

## **I. INTRODUCTION**

     Plaintiff Lorraine Ritchie ("Ritchie" or "plaintiff") brings this action pursuant to §§ 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) & 1383(c)(3), to review a final determination of the defendant Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for

decision without oral argument.[1]

## II. BACKGROUND

Ritchie was born in April 1963, making her forty-six years old when she filed an application for SSI on December 29, 2009. She initially claimed a period of disability beginning on October 9, 2000, when she was injured in a motor vehicle accident. Her claims were denied on March 3, 2010. At plaintiff's request, an Administrative Law Judge ("ALJ") conducted a video hearing on May 23, 2011. Ritchie was represented by counsel at the hearing, during which she agreed to amend her alleged onset date to January 1, 2010. Her alleged disability is primarily caused by neck and back pain, which she has suffered since her accident in 2000. She reportedly experiences breathing difficulty brought on by chronic obstructive pulmonary disease ("COPD") and has mental and cognitive limitations as well. Donald Woolwine, a vocational expert, also testified at the hearing.

The ALJ rendered a written decision on June 15, 2011, denying plaintiff's claims. On August 3, 2011, she appealed the ALJ's decision to the Appeals Council. The Appeals Council denied review on September 19, 2012. Thus, the ALJ's decision became the final decision of the Commissioner. Plaintiff filed this action on November 15, 2012.

## III. DISCUSSION

### A. Standard of Review

The scope of a court's review of the Commissioner's final decision is limited to determinating whether the decision is supported by substantial evidence and the correct legal

---

[1] Pursuant to General Order No. 18 of the Northern District of New York, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. Id. Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

### B. Disability Determination—The Five Step Evaluation Process

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

- 3 -

to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five step evaluative process in determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At Step One, the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity he is not disabled, and he is not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged is substantial gainful employment, then Step Two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, then Step Three requires the ALJ to determine whether, based solely on medical evidence, the impairment meets an impairment listed in Appendix 1 of the regulations. Id. §§ 404.1520(d), 416.920(d); see also id. Pt. 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, Step Four requires the ALJ to assess whether—despite the claimant's severe impairment(s)—he has the residual functional

capacity ("RFC") to perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of proof with regard to the first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996). If it is determined that claimant cannot perform past relevant work, the burden shifts to the agency for Step Five. Id. This step requires the agency to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant has the RFC to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

Where the alleged disability involves a mental impairment, there is a "special technique" that must be applied at Steps Two and Three and at each level of the administrative review process. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008); 20 C.F.R. § 404.1520a. This technique requires consideration of "four broad functional areas," including: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). The first three areas are rated on a five-point scale: "[n]one, mild, moderate, marked, and extreme." Id. § 404.1520a(c)(4). "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits." Kohler, 546 F.3d at 266 (quoting 20 C.F.R. § 404.1520a(d)(1)).

If, on the other hand, the claimant's mental impairment is deemed severe, "the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder." Id. (citing 20 C.F.R. § 404.1520a(d)(2)). If so, the claimant is disabled. Id. If not, the reviewing authority then assesses the claimant's RFC at Step Four. Id. (citing 20 C.F.R. § 404.1520a(d)(3)). The application of this special technique must be documented. 20 C.F.R. § 404.1520a(e).

## C. Analysis

The ALJ determined that Ritchie had not engaged in substantial gainful activity since December 29, 2009, the date of her application for SSI. He then determined that she suffers from several severe impairments including adjustment disorder with depressed mood, degenerative disc disease, COPD, and asthma. He also noted that the medical record includes reports of hypertension, hyperlipidemia, irritable bowel syndrome, and cataracts, but does not support a finding that such ailments amount to severe impairments within the meaning of the Regulations. The ALJ discounted plaintiff's fibromyalgia diagnosis as "not established as a medically determinable impairment by the evidence of record." R. at 33.[2]

The ALJ next found that none of Ritchie's severe impairments, or combination thereof, constitutes an impairment within the Listings. He ultimately determined that she has an RFC that allows her to

> perform light work as defined in 20 CFR 416.967(b) except the claimant can lift up to 20 pounds occasionally; lift up to 10 pounds frequently; and stand/walk about 6 hours and sit for 6 hours in an 8-hour day, with normal breaks. The claimant cannot climb ladders, ropes, or scaffolds. The claimant

---

[2] Citations to "R." refer to the Administrative Record. ECF No. 6.

> can only occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl. The claimant can frequently balance. Further, the claimant needs to avoid concentrated exposure to irritants such as fumes, odors, dusts, gases, poorly ventilated areas, etc. Work is also limited to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements; involving only simple work related decisions and routine workplace changes.

R. at 35–36.

In reaching this conclusion, the ALJ discredited Ritchie's assertion that her impairments severely limit her ability to work. He similarly assigned "limited weight" to the physical assessment completed by her treating chiropractor, Dr. Robert Davies, who opined that her physical limitations hinder her ability to engage in work activities. R. at 38. The ALJ also afforded "little weight" to the opinion of Dr. Angelo Arena, who completed an employability assessment in December 2009 and concluded that plaintiff's mental and physical impairments render her unable to work. Id. Conversely, the ALJ assigned "great weight" to the psychiatric review technique and mental RFC assessment completed by a state agency psychological consultant. Id.

The ALJ then determined that Ritchie's impairments prevent her from performing her past relevant work as a cashier and waitress. However, after considering the testimony of the vocational expert, he concluded that she is capable of performing other jobs that exist in significant numbers in the national economy. Therefore, the ALJ determined that she is not disabled within the meaning of the Social Security Act.

Ritchie argues that the ALJ made several errors warranting remand. Specifically, she claims he erred by: (1) failing to properly evaluate and assign appropriate weight to the opinion of Dr. Davies; (2) discounting her subjective complaints of severe limitations; and (3) determining that she has the RFC to perform light work despite her impairments.

### 1. **Treating Chiropractor Dr. Davies**

Ritchie alleges the ALJ erred by according only "limited weight" to the physical assessment completed by her chiropractor, Dr. Davies, who suggested she is totally disabled.[3]

Although relevant, the opinion of a chiropractor "is not entitled to any special weight in the social security disability context." Knight v. Astrue, No. 09–CV–525, 2012 WL 3996853, at *6 (Sept. 11, 2012) (Bianchini, M.J.). This is so because chiropractors are not "acceptable medical sources" whose opinions are generally entitled to controlling weight when determining whether a claimant has a disabling impairment. See 20 C.F.R. § 404.1513(a). Rather, chiropractors are considered "other medical sources," whose opinion "may" be taken into account when determining how an impairment impacts the claimant's ability to work. Id. § 404.1513(d)(1).

Therefore, "the ALJ has the discretion to determine the appropriate weight to accord the chiropractor's opinion based on all the evidence before him; under no circumstances can the regulations be read to require the ALJ to give controlling weight to a chiropractor's opinion." Diaz v. Shalala, 59 F.3d 307, 313–14 (2d Cir. 1995) (noting that "a chiropractor's opinion is *not* a medical opinion"). Finally, pursuant to Social Security Ruling 06–03p, the

---

[3] Ritchie also points out that the ALJ afforded "little weight" to the opinion of Dr. Angelo Arena. Dr. Arena's involvement with plaintiff's medical care is unclear. The only document in the record relating to Dr. Arena is a two-page "Medical Examination for Employment Assessment" he completed in December 2009. R. at 267–68. Dr. Arena did not indicate whether plaintiff is a patient of his and noted that he has seen her only "sporadically." R. at 268. Plaintiff's brief describes Dr. Arena as a treating physician. Pl.'s Br., ECF No. 8, 4. During a November 2009 psychiatric assessment at Oswego Hospital she apparently reported that Dr. Arena is her "primary care physician." R. at 178. However, Dr. Arena's name was not mentioned at all during the ALJ hearing. In his written decision the ALJ noted: "Dr. Arena is not a treating source. There is no indication that Dr. Arena examined the claimant." R. at 38. Further, plaintiff's brief does not include any discussion of the treating physician rule or any legal argument suggesting the ALJ erred by discounting Dr. Arena's opinion. It is therefore assumed that this argument only pertains to the ALJ's decision to accord "limited weight" to the opinion of her chiropractor, Dr. Davies.

ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." SSR 06–03p, 2006 WL 2329939, at *6 (Aug. 9, 2006).

Dr. Davies began treating Ritchie in May 2001, seven months after her car accident. He completed a written assessment of her physical impairments on May 6, 2011. See R. at 269–74. He noted that she has made "some improvement" throughout the course of her treatment "but has been left with permanent symptoms and limitations to her daily routine." R. at 269. He opined that, in an eight-hour workday with normal breaks, plaintiff can sit and walk for two hours each, stand for three, and must lie down for the other hour. He further reported that her legs are weak, and she cannot climb ladders, stoop, kneel, crouch, crawl, or balance.

The ALJ assigned "limited weight" to this assessment, claiming it is internally inconsistent. He pointed out that Dr. Davies indicated that plaintiff can travel and go shopping alone, walk without assistance, use public transportation, climb a few steps with the assistant of a handrail, prepare simple meals, care for her personal hygiene, and sort, handle, or use paper files. The ALJ further noted that the records from Dr. Davies' office reflect routine and periodic treatment, which is not indicative of severe symptoms.[4]

The ALJ also explained that Dr. Davies' opinion conflicts with evidence elsewhere in the record. For example, in a pre-hearing questionnaire, Ritchie reported that she is able to go shopping for basic items once a week, walk her dogs daily in good weather, attend to her

---

[4] The record indicates one appointment in 2006, five in October and November 2008, three in 2009, and two in January 2010. R. at 190–96. Therefore, it appears that Ritchie has only seen Dr. Davies twice for treatment since her amended alleged onset date of January 1, 2010.

- 9 -

personal care, prepare meals in the microwave, mow her lawn with a riding lawnmower, drive a car, and walk for twenty minutes before stopping to rest. R. at 154–59. Further, following a February 2010 consultative examination, Dr. Roberto Rivera concluded that plaintiff has no limitations in sitting, standing, walking, or lifting. R. at 255.

Accordingly, the ALJ properly considered Dr. Davies' assessment, which is not entitled to controlling weight, and sufficiently explained his reasons for discounting that assessment.

### 2. **Credibility Determination**

Ritchie next argues that the ALJ improperly discounted her subjective complaints of severe physical limitations when determining her RFC and mischaracterized her hearing testimony. She faults the ALJ for failing to specifically discuss each of the seven factors outlined in Social Security Ruling 96–7p.

Although the ALJ is required to consider plaintiff's reports of pain and other limitations when determining the RFC, he may exercise discretion when weighing the credibility of her subjective complaints. Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam). When evaluating a claimant's assertions of pain and other limitations, the ALJ must utilize a two-step approach as outlined in the regulations. Id. First, it must be determined "whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." Id. (citing 20 C.F.R. § 404.1529(b)). If so, the ALJ must then "consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." Id. (quoting 20 C.F.R. § 404.1529(a)).

If a claimant's statements about her symptoms are not substantiated by the objective medical evidence, the ALJ must then consider other evidence in the record and make a

finding on the credibility of the claimant's statements. See SSR 96–7p, 1996 WL 374186, at *3–4 (July 2, 1996). Social Security Ruling 96–7p identifies seven factors to consider when making this credibility assessment. These include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of her symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) treatment, other than medication, that she has received; (6) any other measures she has used to relieve her symptoms; and (7) other relevant factors regarding her limitations and restrictions caused by the symptoms. Id. at *3; 20 C.F.R. § 404.1529(c)(3).

Ultimately, "[i]t is the function of the [Commissioner], not the reviewing courts, to resolve evidentiary conflicts and appraise the credibility of witnesses, including the claimant." Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (internal quotation marks and alteration omitted). As long as the ALJ's decision to discredit the claimant's subjective complaints is supported by substantial evidence, that decision must be upheld. Id.

In his written decision, the ALJ cited the applicable Social Security Rulings and detailed the above two-step analysis of Ritchie's subjective complaints. R. at 36. He concluded that her "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible." R. at 37. He further noted that her complaints "are undermined by the inconsistencies between her assertions and what was documented in the objective and clinical evidence of record." Id.

The record supports the ALJ's finding that Ritchie suffers from physical limitations caused by back and neck pain and respiratory difficulty. There is also substantial evidence

supporting his determination that these severe impairments do not limit her ability to engage in work activities to the extent alleged. As explained above, plaintiff reported that she is able to go shopping for basic items once a week, walk her dogs daily in good weather, attend to her personal care, dress herself, prepare simple meals in the microwave, mow her lawn with a riding lawnmower, drive a car, and walk for twenty minutes before stopping to rest. Dr. Davies noted that plaintiff can travel and go shopping alone, walk without assistance, use public transportation, climb steps with the assistance of a handrail, prepare simple meals, and care for her personal hygiene.

Also, during a February 2010 consultative examination, Dr. Roberto Rivera noted that plaintiff "appeared to be in no acute distress," walked without assistive devices, did not need help changing clothes for the exam or getting on/off the examination table, and rose from a chair without difficulty. R. at 253.[5] Moreover, plaintiff informed Dr. Rivera that she began smoking cigarettes at age eighteen and continues to smoke at least a half of a pack daily. R. at 252. This undermines the credibility of her assertion that her COPD and asthma conditions prevent her from engaging in any work activity.[6] Additionally, the ALJ noted plaintiff's periodic chiropractic appointments and "essentially routine" treatment, her history of back surgery, her lack of treatment or medication for fibromyalgia, few documented trigger points for her asthma, and lack of evidence regarding her alleged heart condition. R. at 37.

---

[5] This conflicts with the notes of "D. Joy," a disability interviewer who met with Ritchie on December 29, 2009, and observed that she "had to walk a little hunched over, had a hard time getting up from seat after interview, [and] had to lean forward during whole interview. R. at 138. However, there is no indication that D. Joy is a medical professional whose opinion must be afforded particular weight.

[6] Indeed, if her respiratory impairments are so severe as to prevent her from working at an ice cream shop due to temperature fluctuation (R. at 12), it is reasonable to assume she should similarly be unable to smoke half of a pack of cigarettes every day.

- 12 -

Therefore, the ALJ adequately considered and addressed the factors outlined in Social Security Ruling 96–7p; to wit, her activities of daily living, the frequency and intensity of her symptoms, precipitating factors, and her general treatment history and progress. His failure to specifically list and discuss all seven factors does not necessitate remand.[7] See Dahl v. Comm'r of Soc. Sec., No. 5:12-CV-302, 2013 WL 5493677, at *9–10 (N.D.N.Y. Oct. 1, 2013) (Sharpe, C.J. & Hines, M.J.) (remand not warranted where the ALJ's credibility determination was based on evaluation of entire record and she specifically discussed only those factors of which there was evidence); Harris v. Astrue, No. 10 Civ. 6837, 2012 WL 995269, at *2 (S.D.N.Y. Mar. 26, 2012) ("[W]hile the ALJ did not specifically refer to the factors, he pointed out numerous inconsistencies in Plaintiff's testimony that relate to each factor that led him to regard her as a non-credible witness. These inconsistencies provide substantial evidence supporting the ALJ's credibility determination.").

In sum, the ALJ's thorough decision indicates he properly considered all relevant medical evidence in the record and provided sufficient explanation for his decision to discredit plaintiff's subjective complaints of severe limitations. Although he did not specifically recite and discuss each of the seven factors listed in Ruling 96–7p, his credibility determination was supported by substantial evidence and will therefore not be disturbed.

### 3. RFC Determination

The ALJ determined that, despite her severe impairments, Ritchie has the RFC to perform "light work as defined in 20 CFR 416.967(b) except the claimant can lift up to 20

---

[7] Plaintiff's assertion that the ALJ erred by not specifically discussing the side effects of her medication is unavailing. During the hearing, she testified only that her medication makes her "tired, groggy, and cloudy." R. at 16. She does not identify anything in the record to support her conclusory assertion that such side effects are severe.

pounds occasionally; lift up to 10 pounds frequently; and stand/walk about 6 hours and sit for 6 hours in an 8-hour day, with normal breaks." R. at 35. Plaintiff claims this determination is not supported by substantial evidence. She specifically argues that she is unable to stand, walk, and sit for the requisite amount of time.

Plaintiff cites her hearing testimony, her answers on the pre-hearing questionnaire, the assessment of Dr. Davies, and observations made by disability interviewer D. Joy to support her assertion that she is unable to remain on her feet for six hours in an eight-hour workday. This evidence, standing alone, arguably supports her assertion that she is unable to stand, walk, and sit for the amount of time demanded by light work. However, the record must be considered in its entirety, and the ALJ's determination must be upheld if supported by substantial evidence. See Williams, 859 F.2d at 258.

As explained above, the ALJ's decision to accord limited weight to Dr. Davies' opinion and to discount the credibility of Ritchie's subjective complaints is supported by substantial evidence elsewhere in the record. In particular, this evidence conflicts with plaintiff's admissions regarding her ability to perform activities of daily living. She indicated that she can shop at least once a week, walk her dogs daily in good weather, attend to her personal care, dress herself, prepare simple meals in the microwave, mow her lawn with a riding lawnmower, drive a car, and walk for twenty minutes before stopping to rest.

Moreover, Dr. Rivera examined plaintiff in February 2010 and noted that she walked without assistive devices, did not need help changing clothes for the exam or getting on/off the examination table, and rose from a chair without difficulty. He concluded that she has no limitations in sitting, standing, walking, or lifting, and mild to moderate limitations in carrying, pushing, or pulling. R. at 255. The ALJ's RFC determination comports with this assessment.

Where, as here, the evidence in the record is susceptible to more than one rational interpretation, the ALJ's decision must be upheld—even if a court's independent review of the evidence may differ. See Rutherford, 685 F.2d at 62 ("[F]actual issues need not have been resolved by the Secretary in accordance with what we conceive to be the preponderance of the evidence. Congress has instructed us that the factual findings of the Secretary, if supported by substantial evidence, shall be conclusive."); Rosado, 805 F. Supp. at 153 ("In reviewing a denial of disability benefits, the court is not empowered to make a *de novo* determination of whether the plaintiff is disabled.").

Accordingly, the ALJ's determination that Ritchie has the RFC to perform a range of light work was arrived at through the correct legal analysis and is supported by substantial evidence in the record.

## IV. **CONCLUSION**

The opinion of Ritchie's treating chiropractor, Dr. Davies, was not entitled to controlling weight, and the ALJ's decision to assign it only "limited weight" was not error. Similarly, the ALJ properly discounted plaintiff's subjective complaints, which were inconsistent with substantial evidence elsewhere in the record. Finally, although a de novo review of the entire record could arguably yield a different conclusion regarding plaintiff's physical ability to perform light work, there is substantial evidence in the record supporting the ALJ's RFC determination.

Therefore, it is

ORDERED that

1. The Commissioner's decision denying plaintiff Supplemental Security Income is AFFIRMED; and

2. The complaint is DISMISSED in its entirety.

The Clerk of the Court is directed to enter judgment accordingly and close the case.

IT IS SO ORDERED.

_____
United States District Judge

Dated: May 13, 2014
      Utica, New York.